**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **KAMYAR KOMEILI BIRJANDEE**<br><br>Plaintiff,<br><br>v.<br><br>**U.S. DEPARTMENT OF VETERANS' AFFAIRS and U.S. ENVIRONMENTAL PROTECTION AGENCY,**<br><br>Defendants. | **Civil Case No. 8:25-cv-02620-LKG** |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

Defendants, by and through undersigned counsel, hereby submit the following Motion to Dismiss or for Summary Judgment under Rules 12 and 56 of the Federal Rules of Civil Procedure.

## I. INTRODUCTION

Plaintiff Kamyar Komeili Birjandee ("Plaintiff" or "Birjandee") was employed by the U.S. Veteran's Administration ("VA") and then the U.S. Environmental Protection Agency ("EPA"). He has filed suit under the Administrative Procedures Act ("APA") challenging the accuracy of his VA employment records, and the EPA's decision not to convert him to a regular full-time position in the Competitive Service. ECF 1 at 1. However, the APA cannot be used to circumvent the Privacy Act or the Civil Service Reform Act ("CSRA") which provide, respectively, a method to challenge the accuracy of federal records, and protection against prohibited personnel practices for certain classes of employees. Given the clear and apparent lack of statutory authority or factual support for his claims, they must be dismissed for lack of subject matter jurisdiction, and failure to state a claim. In the alternative, the Court should grant summary judgment for Defendants.

# I. FACTUAL AND PROCEDURAL HISTORY

## A. Plaintiff's Career Conditional Competitive Service Position with the VA

In August 2023, Plaintiff applied for and was selected for a Paralegal Specialist Position at the VA Office of General Counsel. **Exhibit 1**, Vacancy Announcement; **Exhibit 2**, Offer Letter. The announcement indicated that it was open to "recent graduates." *Id*. Both the vacancy announcement and initial hiring paperwork clearly designated the position as a Career Conditional Appointment in the *Competitive Service* under the regulatory authority in 5 C.F.R. § 315.614(A).[1] *Id*., and **Exhibit 3**, SF-50: Boxes 5-B, 5-D, 24, 34.[2] The regulations governing that appointment authority provide that an agency may appoint a qualified recent graduate from a bachelors or graduate program "noncompetitively" to a professional or administrative position at a GS-11 level or below. *See* 5 C.F.R. § 315.614(a), (b). Appointments under that authority are career or career-conditional *permanent* positions in the *Competitive Service*. 5 C.F.R § 315.614(f). That language is entirely consistent with the VA Vacancy Announcement that Plaintiff applied and was selected for, which listed the position as a "Permanent" position in the "Competitive Service" and which included the requirement that the applicant be a "Recent Graduate" who "obtained a qualifying bachelors or graduate degree from a qualifying educational institution within the previous two years." *See* VA Vacancy Announcement CARX-12059955-23-LR, **Exhibit 1**, at pp. 2-4, 7. The specific position Plaintiff was selected for was a career *conditional* appointment, which means that

---

1 The regulatory language at 5 C.F.R. § 315.614 provides agencies the authority to hire and appoint an eligible and qualified recent graduate "noncompetitively" to a professional or administrative position at the general schedule (GS) 11 level or below, "without regard to the provisions of 5 U.S.C. 3309 through 3319 and 3330" (which set forth the requirements for recruiting and selecting candidates for competitive service positions, and require that the process be open to all applicants).

2 A position in the "Competitive Service" is one where the applicant must go through a competitive hiring process *which is open to all applicants*. All civilian positions with executive agencies of the Federal Government which are not specifically "excepted" from the civil service laws are "Competitive Service" positions and are governed by civil service laws. 5 C.F.R. § 212.101.

it *was not* limited to a specific term, but *was initially* "conditional" on successful completion of a one-year probationary period. SF-50 at **Exhibit 3**, Box 45, Remarks. Plaintiff held that position from October 2023 until July 2024, when he accepted a position with the EPA. **Exhibits 4, 5, 6**.

**B. Plaintiff's "Pathways Program" Term Limited Appointment at the EPA.**

The "Pathways Programs" were established by Executive Order and include an Internship Program, Recent Graduates Program, and Presidential Management Fellows Program. Executive Order ("EO") 13562—Recruiting and Hiring Students and Recent Graduates, December 27, 2010. 75 FR 82585, 2010 WL 5388353. The "Recent Graduates Program" was intended to provide individuals who have recently graduated from qualifying educational institutions with developmental experiences in the Federal Government intended to promote possible careers in the civil service. *See* EO 13562, *Section 4*.[3] The EO directs OPM to issue regulations implementing the program, which can be found at 5 C.F.R. §§ 362.101 – 362.306.

Plaintiff applied for a Vacancy at the EPA, which was specifically identified as a "Recent Graduates" position in the "Pathways Program." As reflected in the regulations, offer and related personnel notices, Plaintiff was required to sign a Pathways Program Participant Agreement. **Exhibits 5, 6, 7.** The Agreement specified that it was a one-year term appointment not to exceed July 13, 2025, and identified the "*minimum eligibility requirements*" for non-competitive conversion at the conclusion of the program; it also made clear that "eligibility for conversion does

[3] Appointments to any of the Pathways Programs were to be categorized under Schedule D of the excepted service, and appointments under the Recent Graduates program are limited to 2 years, unless extended by the employing agency for up to 120 days thereafter. EO 13562, *Section 6*. Appointments to a Pathways Program position shall all confer no right to further Federal employment in either the competitive or excepted service upon the expiration of the appointment. However, "agencies ***may*** convert eligible participants noncompetitively to term, career, or career conditional appointments after satisfying requirements to be established by OPM and ***may*** noncompetitively convert participants who were initially converted to a term appointment under this section to a career or career-conditional appointment before the term appointment expires." *Id*. (emphasis added).

not guarantee that the agency will decide to opt for conversion." *See* Participant Agreement at **Exhibit 7** at pp. 34-35; 5 C.F.R. § 362.106. Time in the Recent Graduates Pathways Program is considered an "excepted" service "trial period." 5 C.F.R. § 362.303(f). Service in the Program, even if successful, confers no right to further employment in either the competitive or excepted service. 5 C.F.R. § 362.107(f). At the end of his one-year appointment with the EPA, Plaintiff was notified that his appointment had ended, and he would "not be converted into the competitive service" at the EPA. **Exhibits 13, 14**, Notice of Non-Conversion, Notice of Personnel Action.

### C. Administrative and Procedural History

After receiving notice of his non-conversion Plaintiff contacted Human Resources ("HR") personnel at both the VA and the EPA, seeking "correction" of what he argued were inaccurate records in his personnel file. **Exhibits 15-17**.[4] Specifically, he contended that despite the clear language in the VA Announcement and hiring documentation that listed his position at the VA as a Competitive Service position, it should have been coded as a "Pathways Program" position. *Id*. Both the VA and EPA responded and confirmed that the VA records correctly reflected his hire at the VA into a Competitive Service position, and his hire at the EPA into a Pathways Program term limited excepted service position. **Exhibits 15-17**.

In August of 2025, Plaintiff filed an appeal of the EPA's decision not to convert him to a Competitive Service position with the MSPB. **Exhibit 18**, MSPB Appeal. The MSPB docketed his appeal and immediately issued an order requiring that he respond with information demonstrating that he held a position that met the definition of "employee" covered by the CSRA

---

[4] After learning he was on a list of probationary employees that may be subject to a Reduction In Force ("RIF") Plaintiff sent several requests for correction of what he viewed were errors in his personnel records to the VA and EPA in February 2025. HR Officials from both agencies found that his records were correctly and accurately represented the types of appointments he held at each Agency. **Exhibits 9-12**.

which entitled him to seek review with the MSPB. **Exhibit 19**, MSPB Docketing Notice. The Notice made clear that unless he could establish a "non-frivolous" reason for MSPB to exercise jurisdiction over the termination of what appeared to be a term-limited appointment, the appeal would be dismissed for lack of jurisdiction. *Id*.

On September 24, 2025, the MSPB issued an "Initial Decision" finding that Plaintiff had not established that the MSPB had jurisdiction over the EPA's failure to convert him to a competitive position at the end of his term appointment. **Exhibit 20**.[5] Based on the records before him, the Administrative Judge concluded that Plaintiff's position at the EPA was a Schedule D term limited appointment under the Pathways Program and was therefore subject to a trial period under 5 C.F.R. § 213.3402. As such, when the EPA notified him at the end of his one-year term that he would not be converted to a term or permanent position he was in a temporary appointment. *Id*. at p. 2. Employees in the excepted service do not have MSPB appeal rights if they are serving in a temporary appointment of two years or less at the time of the challenged action; this was clearly the case for Plaintiff. In his appeal, he sought to claim that his service at the VA, and the EPA *together* should have provided him with MSPB appeal rights. Based on the records, the Administrative Judge found that was not the case. While the appellant "had prior Federal service, consisting of a competitive service appointment with the Department of Veterans Affairs" it was clear from the records that "he was serving in a trial period at the time of his termination, and he had neither completed two years in an excepted service appointment nor one year in a competitive

[5] The Board's jurisdiction is not plenary. It is limited to those matters over which it has been given jurisdiction by law, rule or regulation. *Maddox v. Merit Systems Protection Board*, 759 F.2d 9, 10 (Fed. Cir. 1985). It is well established that the Board does not have jurisdiction over all actions that are alleged to be unfair or incorrect, and that the appellant has the burden of proving that the Board has jurisdiction over his appeal. *See* 5 C.F.R. § 1201.56(a)(2); *see also Marren v. Department of Justice*, 49 M.S.P.R. 45, 51 (1991). In most cases, an appellant is entitled to a jurisdictional hearing only if he makes a nonfrivolous allegation that the Board has jurisdiction over his appeal. *See Garcia v. Department of Homeland Security*, 437 F.3d 1322, 1344 (Fed. Cir. 2006). **Exhibit 20**, p. 2.

service appointment." *Id*. at p. 3. As a result, the appeal was dismissed for lack of jurisdiction.

Per the Notice of Rights included in the September 24, 2025 MSPB Initial Decision, Plaintiff could have filed a Petition for Review with the MSPB within 35 days of the Initial Decision or sought review by the U.S. Court of Appeals for the Federal Circuit not more than 60 days after the Initial Decision became final on October 29, 2025. He did neither.

Plaintiff filed this lawsuit against his two former employers, the U.S. Environmental Protection Agency ("EPA") and the U.S. Department of Veteran's Affairs ("VA") on August 8, 2025. ECF 1. In the Complaint he contends that during his employment with the VA, he was misclassified, and that as a result the EPA was required to convert him to a competitive service position when his term appointment ended. ECF 1 at pp. 2-4. He seeks to challenge both the VA's failure to correct his records and the EPA's decision not to convert him under APA and contends that the actions of both agencies are arbitrary, capricious and contrary to law. His requested remedies include an order requiring that the VA correct his personnel records, and an order requiring the EPA to "reinstate him" to a competitive service position with the EPA. *Id.*

Summons was issued on August 22, 2025. ECF 7. More than 90 days later, in early December, Plaintiff finally delivered a copy of the August 22, 2025 Summons and the Complaint to the Defendant agencies. However, the Summons was no longer valid after 90 days. *See* FRCP

4(m).[6] As such, Defendants have not been properly served, requiring dismissal.

## II. LEGAL STANDARDS

A motion to dismiss based on lack of subject matter jurisdiction pursuant to FRCP 12(b)(1) raises the question of whether the court has the competence or authority to hear the case. The "plaintiff bears the burden of persuasion if subject matter jurisdiction is challenged" since the "party who sues the United States bears the burden of pointing to an unequivocal waiver of immunity." *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (internal citations omitted). Motions to dismiss for lack of subject matter jurisdiction are properly granted where a claim fails to allege facts upon which the court may base jurisdiction. *Crosten v. Kamauf*, 932 F.Supp. 676, 679 (D.Md. 1996).

Under Rule 12(b)(6), a court may dismiss a claim where it is clear that a plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001). In evaluating a motion to dismiss, the court must accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the plaintiff, *Jenkins v. McKeithen*, 395 U.S. 411, 421-22 (1969); *Martin Marietta Corp. v. Int'l Telecommunications Satellite Org*., 991 F.2d 94, 97 (4th Cir. 1992). But, the court is not obliged to accept plaintiff's "conclusory allegations regarding the legal effects of the facts

[6] Rule 4(m) provides that there is a time limit for service, and that if a defendant is not served within 90 days, the court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." The rule goes on to provide that "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Based on the clear language of the rule, absent an order of this Court extending the time limit for service, the case must be dismissed if Defendant is not served within 90 days. No order extending the time for service was entered in this matter. As such, the Summons issued by the Clerk on August 22, 2025 had already expired and was no longer effective when it was included in the papers delivered to the Defendant agencies in December 2025. *See* FRCP 4(m); *Gelin v. Baltimore Cnty., Maryland*, No. ADC-16-3694, 2023 WL 1863504, at *5 (D. Md. Feb. 9, 2023) (absent an order finding good cause or other reasonable basis, service after 90-day time limit had expired was not effective service of process).

alleged." *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995). A complaint that fails to state a legal claim will be dismissed. *District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085–86 (4th Cir. 1979).

Documents attached to the complaint may be considered when evaluating a motion to dismiss, so long as they are integral to the complaint and authentic. *See Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006). A court may also consider documents referred to and relied upon in the complaint—"even if the documents are not attached as exhibits." *Fare Deals Ltd. v. World Choice Travel.com, Inc.*, 180 F.Supp.2d 678, 683 (D.Md. 2001); *accord New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 18 F.3d 1161, 1164 (4th Cir. 1994).[7]

Summary judgment is proper if the pleadings, documents and other information, together with any declarations or affidavits, show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate the absence of any material issue of fact. *Celotex*, 477 U.S. at 323. Once the moving party satisfies his initial burden, the non-moving party "may not rest upon his allegations" but must present evidence demonstrating the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Plaintiff cannot meet that burden here.

---

[7] Plaintiff attached full copies of several of his Personnel Action Notices, Correspondence seeking to correct his records, and the Vacancy Announcement from his VA position to the Complaint. *See* ECF 1, Plaintiff's Exhibits 1-6. While it is not attached, the Complaint also refers to his MSPB appeal. All of those records, along with others that are part of his personnel file or which he sent or received himself are attached to this Motion. Given Plaintiff's attachment of many of these documents to his Complaint, and multiple references to his personnel records, this Court may consider them. There is no dispute that documents are both integral to his case and authentic. *See White v. Mortg. Dynamics, Inc.*, 528 F.Supp.2d 576, 579 (D.Md. 2007) (finding that documents from the administrative record were integral to plaintiff's complaint).

## III. ARGUMENT

Plaintiff contends that the APA provides this Court with jurisdiction over his claims. However, APA is used as a default provision which provides a general right to review for "final agency action for which there is no other adequate remedy in a court." 5 U.S.C § 704. If there is a specific statute that governs the challenged action, that statute takes precedence, and precludes invocation of the APA for subject matter jurisdiction.[8] That is the case with respect to Plaintiff's claims against both Defendants. Plaintiff's challenges to his VA personnel records and the EPA's decision not to retain him at the end of his term appointment are the subject of specific statutory remedies and therefore are not the proper subject of an APA challenge.

### A. Plaintiff's Claims Against the VA Challenging the Accuracy of his Personnel Records are Not Actionable under the APA, and He has Failed to Exhaust His Claims under the Privacy Act.

The Privacy Act provides a cause of action for failing to maintain accurate records, and mechanism to challenge their accuracy. *See* 5 U.S.C. § 552a(e)(2), (5), and (6); *Peter B. v. C.I.A.*, 620 F. Supp. 2d 58, 74–75 (D.D.C. 2009). The Privacy Act allows for amendment of factual or historical errors, in but is limited in scope; it is not a vehicle for amending the judgments of federal officials as reflected in records maintained by federal agencies. *Peter B. v. C.I.A.*, 620 F. Supp. 2d 58, 76 (D.D.C. 2009) (substantive challenges would fall under the CSRA).[9] But, correction of

---

8 The APA "excludes from its waiver of sovereign immunity claims for which an adequate remedy is available elsewhere" as well as "claims seeking relief expressly or impliedly forbidden by another statute." *Fornaro v. James*, 416 F.3d 63, 66 (D.C.Cir. 2005); *Kursar v. Transportation Sec. Admin.*, 581 F. Supp. 2d 7, 15 (D.D.C. 2008), *aff'd*, 442 F. App'x 565 (D.C. Cir. 2011). The APA also does not apply where other statutes preclude judicial review. 5 U.S.C. § 701(a)(1). Thus, where Congress has provided a plaintiff with statutory schemes and remedies through which he may seek relief, an APA claim does not lie and must be dismissed. *Mittleman v. U.S. Treasury*, 773 F.Supp. 442, 449 (D.D.C. 1991).

9 To the extent Plaintiff seeks to challenge not the *accuracy* of the records, but the determination that based on his entire history of federal service, the EPA was not required to convert him to a competitive service position in July 2025, that challenge would clearly fall under the CSRA. Like the termination claim discussed below, Plaintiff cannot mount a collateral attack on his personnel file or decision not to convert him to a competitive position after the natural end of his term appointment via the APA *or* the Privacy Act.

factually inaccurate records is quite clearly actionable under the Privacy Act. *Id*. Given the availability of a specific statutory remedy, an APA challenge to Plaintiff's records under the APA is not available; the APA cannot be used in lieu of an existing statutory remedy.

With respect to any Privacy Act claim, the Plaintiff must exhaust and pursue his remedies before filing suit. In order to pursue a civil action for amendment of a record under the Privacy Act, an individual must exhaust administrative remedies by making an amendment request to the agency and requesting administrative review. *See* 5 U.S.C. § 552a(d)(2)-(3). The requirement that a plaintiff seek amendment or correction of their record through the available administrative process before filing a civil court is imposed by the Act and well established in the Privacy Act case law. Courts have consistently required the individual to file a request for amendment of his records, in conformity with the agency's regulations, before commencing a subsection (g)(1)(A) lawsuit. *See, e.g.*, *McKoy v. Spencer*, No. 1:16-cv-01313, 2019 WL 400615, at *5-6 (D.D.C. Jan. 31, 2019); *Otero v. DOJ*, 292 F. Supp. 3d 245, 251-52 (D.D.C. 2018); *Hutton v. VA*, No. 12-cv-190, 2013 WL 1331191, at *1-2 (M.D.N.C. Mar. 29, 2013); *Middlebrooks v. Mabus*, No. 11-cv-46, 2011 WL 4478686, at *5 n.10 (E.D. Va. Sept. 23, 2011); *Olivares v. NASA*, 882 F. Supp. 1545, 1552 (D. Md. 1995), *aff'd,* 103 F.3d 119 (4th Cir. 1996) (unpublished).

Exhaustion of administrative processes generally includes exhaustion of administrative appeals. Plaintiff's failure to exhaust administrative remedies in accordance with applicable agency regulations precludes him from raising them for the first time here. *See, Vaughn v. Danzig*, 18 F. App'x 122, 125 (4th Cir. 2001) (affirming district court's summary judgment where request did not comport with the agency's process for submitting requests under the Freedom of Information Act, Privacy Act, or Navy regulations implementing those statutes). While Plaintiff sent countless letters, email messages, and other missives, he has presented no evidence that he

sought official review of his request for correction of his records under the Privacy Act. Based on his failure to seek correction through the remedies under the Privacy Act in the manner specified in VA, EPA or OPM regulations, Plaintiff cannot litigate those claims here.[10]

### B. Plaintiff Cannot Challenge his Non-Conversation Under the APA; the CSRA Controls and Precludes Review of the Natural End of a Term Appointment.

Plaintiff seeks APA review of the EPA's decision not to convert him to a permanent competitive position at the end of his term appointment under the Pathways Program. However, Plaintiff cannot circumvent relevant provisions of the CSRA, by invoking the APA. The applicable regulations governing the Pathways Program make clear that the agency ***may,*** but is not required to, convert a participant to a competitive position at the conclusion of the appointment. For that reason, those serving in temporary or term position are not included in the definition of "employees" covered by the CSRA who have MSPB appeal rights. Where the CSRA clearly excludes a category of employment from challenges of this nature, the APA cannot be used to establish a cause of action.

Plaintiff concedes that his employment at the EPA was an appointment under the Pathways Program. ECF 1 at ¶ 5; **Exhibit 6**, EPA July 2024 SF-50. That program is governed by specific personnel regulations. *See* 5 C.F.R §§ 362.101 - 362.409. By design, the program provides job opportunities to recent graduates without the guarantee of a future competitive service career position, or continued employment after the initial term. *See* 5 C.F.R. § 362.107(f). The regulations make clear that time served in an appointment in the Recent Graduates Pathways Program is an

---

[10] If what he truly seeks is not *correction* of the records themselves, but the conclusions drawn by agency employees based on *accurate* records, those claims would not be actionable under the Privacy Act but would instead fall under the CSRA. *Doe v. U.S. Dep't of Just.*, 660 F. Supp. 2d 31, 43 (D.D.C. 2009). In either case, no remedy would exist under the APA. *See Byrnes v. Merit Sys. Prot. Bd.*, No. 04–742, 2005 WL 486156, at *2 (D.D.C. Mar. 2, 2005) (the Privacy Act cannot be used as a vehicle to correct a substantive decision that went against the plaintiff's interest).

"excepted service" trial period. 5 C.F.R. § 362.303(f). As such, during or at the conclusion of the appointment, the participant has no right to further employment in either competitive or excepted service. 5 C.F.R. § 362.107(f); see also *Peter B. v. C.I.A.*, 620 F. Supp. 2d 58, 70 (D.D.C. 2009).

Plaintiff's employment records are entirely consistent with these regulations. Both the Program Agreement and Personnel Action Notice regarding his EPA appointment make clear that neither continued employment nor conversion to a permanent competitive position are guaranteed, and that employment may and will end at the end of the appointment unless the agency decides to convert the participant to a competitive position. **Exhibits 6, 7**.

Plaintiff's inability to invoke the protections of the CSRA and secure MSPB review is clear based on two separate ; (1) someone serving in a term limited and/or temporary excepted position is not an employee as defined by the CSRA, see 5 U.S.C. § 7511(a)(1); and (2) a person serving in a term appointment whose appointment ends upon the expiration of that term simply does not set forth an adverse action. *See Sohbatzadehlanbar v. Dep't of the Navy*, No. SF-0752-18-0579-I-1, 2024 WL 3983843, at *2 (M.S.P.B. Aug. 28, 2024) (finding MSPB review of the end of appellant's employment upon termination of his term appointment in the Pathways Program was not available).

Courts are clear, when the CSRA precludes judicial review of an adverse personnel action, the APA cannot be used to circumvent it. *Harrison v. Bowen*, 815 F.2d 1505, 1513 (D.C.Cir. 1987); *Carducci v. Regan*, 714 F.2d 171, 174–75 (D.C.Cir. 1983); *Peter B. v. C.I.A.*, 620 F. Supp. 2d 58, 70 (D.D.C. 2009). That is plainly what the Plaintiff seeks to do here. In fact, he contends that the MSPB's dismissal of his appeal for lack of subject matter jurisdiction demonstrates that "this Court is the only appropriate venue for Plaintiff's claims" and thereby vests this Court jurisdiction to hear the case. ECF 1 at p. 2. That is simply not how jurisdiction works.

The CSRA presents a comprehensive and "exclusive framework for judicial review" of personnel decisions within its ambit. *Am. Postal Workers Union, AFL–CIO v. U.S. Postal Serv.*, 940 F.2d 704, 709 (D.C.Cir. 1991) (internal quotations and citations omitted). It also excludes certain categories of employees from those who are eligible to invoke its review procedures. *See Peter B. v. C.I.A.,* 620 F. Supp. 2d 58, 69 (D.D.C. 2009). The exclusion of certain employees simply "does not leave them free to pursue whatever judicial remedies they would have had before enactment of the CSRA." *Peter B. v. C.I.A.*, 620 F. Supp. 2d 58, 69 (D.D.C. 2009).

That is particularly true with respect to proposed claims under the APA; the APA is a default statute and cannot be used where other specific remedies like the CSRA contain clear limitations. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 800 (D. Md. 2005). To the extent Plaintiff believes that the MSPB wrongly concluded he was not eligible to raise claims under the CSRA, his recourse would have been an appeal to the U.S. Court of Appeals for the Federal Circuit. The APA, however, was not and is not available to "end-run" statutes that limit the MSPB's jurisdiction. *Davis*, 367 F. Supp. 2d 792, 801 (D. Md. 2005)

**IV. CONCLUSION**

For the reasons set forth above, Defendants ask that the Court dismiss the Complaint for lack of subject matter jurisdiction, or failure to state a claim under Rule 12, or grant summary judgment for Defendant under Rule 56.

February 13, 2026

Respectfully submitted,

KELLY O. HAYES
United States Attorney

*/s/ Ariana Wright Arnold*
Ariana Wright Arnold
Assistant United States Attorney
(DMD Bar No. 23000)
U.S. Attorney's Office, District of MD
36 S. Charles Street, 4th Floor
Baltimore, Maryland 21201
Ph 410-209-4813
Email: Ariana.arnold@usdoj.gov

*for Federal Defendants*

**<u>Exhibit Index</u>**

Defendants Motion to Dismiss or for Summary Judgment

01 -- 2023.07.21 - VA Vacancy Announcement - Paralegal Specialist - Competitive Service

02 -- 2023.09.28 - VA Offer Letter / Welcome Email

03 -- 2023.10.08 - SF-50 Personnel Action Notice for Hire by VA OGC

04 -- 2024.07.13 - SF-50 Personnel Action Notice for Termination / Transfer from VA to EPA

05 -- 2024.07.02 - EPA Offer Letter + Details

06 -- 2024.07.14 - SF-50 Personnel Action Notice for Pathways Program Hire by EPA

07 -- 2024.07.14 - EPA Pathways Program Agreement

08 -- 2024.10.06 - SF-50 Personnel Action Notice for Increase to GS 11

09 -- 2025.02.04 - Letter from Komeili Birjandee to EPA HR requesting correction

10 -- 2025.02.06 - Email from EPA HR - VA position was competitive service - no corrections

11 -- 2025.02.05 - Letter from Komeili Birjandee to VA HR request for correction

12 -- 2025.02.05 - VA HR Response to request for correction - no corrections will be made

13 -- 2025.07.13 - SF-50 Personnel Action Notice for Termination of EPA appointment

14 -- 2025.07.15 - EPA Notice of Non-Conversion from Pathways Program

15 -- 2025.08.20 - Komeili Birjandee Email to VA Requesting correction of VA records

16 -- 2025.09.08 - Email from VA HR - No further response required – no corrections needed

17 -- 2025.08.21 - EPA HR Official Response to your email to EPA Admin Zeldin

18 -- 2025.08.06 - Komeili Birjandee MSPB Initial Appeal

19 -- 2025.08.06 - Komeili Birjandee MSPB Acknowledgment Order – Jurisdiction Questioned

20 -- 2025.09.24 - Komeili Birjandee MSPB Initial Decision